IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:13-CV-24-BO

IN ADMIRALTY

| | |
|---|---|
| JAMIE S. DANIELS, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) |
| THE FISHING VESSEL JOHN & NICHOLAS, OFFICIAL NUMBER 1102517, her engines, tackle, fishing gear, permits and apparel, etc., *in rem*, and JOHN & NICHOLAS, INC., *in personam*, | ) ) ) ) ) ) ) |
|     Defendants. | ) |

**ORDER**

This matter is before the Court on the defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) [DE 10]. A hearing on this motion was held in New Bern, North Carolina on July 24, 2013 at 3:15 p.m. For the reasons stated herein, the defendant's motion is DENIED.

## BACKGROUND

Plaintiff (Mr. Daniels) was a crewmember on defendant's fishing vessel John & Nicholas (J&N). On February 13, 2010, the J&N sailed from Newport News, Virginia to begin a scallop trip in the Delmarva closed region. The plaintiff was injured onboard the vessel on February 20, 2010. Mr. Daniels remained on the vessel until February 23, 2010 when the vessel landed in Newport News, Virginia. Immediately after landing, the plaintiff sought medical care in Virginia. Mr. Daniels received the remainder of his medical care in North Carolina. Mr. Daniels has now initiated a suit in admiralty against the vessel and its owner. The corporate defendant

1

argues that the plaintiff's filing of suit in this Court was improper as the defendant has not had contacts with the forum state of North Carolina sufficient to support this Court's personal jurisdiction over it. Although the defendant is incorporated in the State of New Jersey, and has its principal place of business there, it has had numerous contacts with the State of North Carolina recently and over the years.

First, the vessel landed in North Carolina eighteen times during the period from 2008 to 2013. Although the vessel has made no port calls here in 2013, it made one North Carolina port call in 2012, and three in 2011. Further, all the trips in which the plaintiff participated after his 2009 rehiring either landed in North Carolina or landed in Virginia with special permission from North Carolina. These trips occurred in late 2009 and early 2010. These North Carolina port represent just one type of contact that the defendant had with this state.

In addition to docking in North Carolina eighteen times, J&N landed fish during each of those landings and landed fish eight times in Virginia using its North Carolina quota allotments. J&N landed the following annual poundage at Graybeards, LLC in Wanchese, North Carolina:

| Year | Poundage |
|------|----------|
| 2008 | 60,813   |
| 2009 | 77,614   |
| 2010 | 84,177   |
| 2011 | 18,769   |
| 2012 | 17,148   |

North Carolina law permits the transfer of North Carolina fishing quotas to Virginia when emergencies or weather conditions prohibit a vessel from landing in North Carolina. Due to shoaling conditions at Oregon Inlet, J&N landed in Virginia eight times during the period from 2010 to 2013. The poundage landed in Virginia, but using a North Carolina quota, is as follows:

2

| Date | Flounder (in lbs.) | Sea bass (in lbs.) |
|---|---|---|
| 1/2/2010 | 7,401 | 154 |
| 3/6/2011 | 9,476 | |
| 1/3/12 | 9,701 | 2.302 |
| 2/13/12 | 8,372 | 439 |
| 2/18/12 | 8,742 | 18 |
| 1/31/13 | 14,857 | 9 |
| 2/27/13 | 15,000 | 984 |

Of course, in order to land any fish in North Carolina, J&N was required to hold certain state licenses. In addition to its federal licenses and state licenses held in other states, J&N held at least three licenses issued by the State of North Carolina. The J&N held a North Carolina license to land flounder. J&N has held such a license every year since October, 2007. Only 150 of these licenses are in use at any given time. J&N also held a North Carolina license to land and sell fish. J&N has held such a license every year since October, 2010. Both the flounder and land and sell licenses expired on June 30, 2013 – at the time of the hearing it was not clear whether J&N had renewed them. Finally, the vessel had held a North Carolina commercial fishing vessel registration from October, 2007 through June, 2009.

In addition to landing in North Carolina, holding several North Carolina fishing licenses, and landing and selling fish caught under North Carolina fishing quotas, the vessel recruited its crew, including the plaintiff in North Carolina. In March, 2009, plaintiff was contacted at his residence in Beaufort County, North Carolina by Richard Gibbs. At the time, Mr. Gibbs, a commercial fisherman from Hyde County, North Carolina, was captain of the J&N. Other members of the crew were also residents of North Carolina. Mr. Gibbs recruited the plaintiff to his crew and plaintiff worked on the vessel until August, 2009 when fishing slowed and he was laid off. The plaintiff was re-hired in December, 2009. His injury occurred shortly thereafter in February, 2010.

## DISCUSSION

I. RULE 12(b)(2) STANDARD.

The defendant has alleged that this Court lacks personal jurisdiction over it. When a challenge to personal jurisdiction is addressed under Federal Rule of Civil Procedure 12(b)(2), the plaintiff must make a "prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The district court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* Once a defendant has provided specific details contrary to a plaintiff's assertion of facts supporting jurisdiction, a plaintiff's "bare allegations that the defendants had significant contacts with the [forum] state" are insufficient to establish jurisdiction by a preponderance of the evidence. *Carefirst of Md., Inc.v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396, 402–03 (4th Cir. 2003). The plaintiff "must present affidavits or other evidence if the defendant counters plaintiff's allegations with evidence that minimum contacts do not exist." *Clark v. Remark*, 1993 WL 134616, at *2 (4th Cir. 1993).

In order for a district court to exercise personal jurisdiction over a defendant pursuant to a state long-arm statute, (1) the forum state's long-arm statute must authorize the exercise of personal jurisdiction and (2) the defendant must have sufficient minimum contacts with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Because North Carolina's long-arm statute "is designed to extend jurisdiction over nonresident defendants to the fullest limits permitted by the Fourteenth Amendment's due process clause,"

4

these inquiries collapse into one. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

Likewise, the due process inquiry consists of two prongs. First, the defendant must have "minimum contacts" with the forum state such that it invoked the protection and benefits of that states laws and, therefore, could reasonably expect to be haled into court there. Second, the circumstances must be such that the court's exercise of personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Asahi Metal industry Co. v. Superior Court of California*, 480 U.S. 102 (1987).

The defendant's minimum contacts with the state can support either specific or general jurisdiction. First, if the foreign party maintains "continuous and systematic" contacts with a state, that state has general personal jurisdiction over the party, and the nonresident may be in that state on any claim. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952). When no such general contacts exist a court may assert specific personal jurisdiction only if the litigation arises out of the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.8 (1984). The type of jurisdiction at issue here is general personal jurisdiction.

II. GENERAL JURISDICTION.

In order to establish personal jurisdiction over the defendant it must be shown that the defendant had "continuous and systematic general business contacts" with North Carolina sufficient to sustain general jurisdiction by this Court. *See Helicopteros Nacionales de Colombia*, 466 U.S. at 416. "[T]he threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *ESAB Grp.*, 126 F.3d at 623–24.

5

III. DEFENDANT'S CONTACTS WITH NORTH CAROLINA.

The defendant is correct that the proper inquiry into the defendant's contacts with the forum state is one which examines the nature and quantity of the contacts at the time of service of process. However, this inquiry is not confined to some concretely defined time period. Rather, the Court may consider contacts in the weeks and months leading up to the time of service. The period of time reviewed should be one that is reasonable under the circumstances. *Young v. Hair*, 7:02-CV-212-F, at *6 (E.D.N.C. Jan. 26, 2004). Moreover, where the defendant has established a course and pattern of business the Court may consider those historical contacts as part of its analysis. Here, the natural ebb and flow of the fishing business make historical contacts particularly relevant. A defendant who shifts its contacts because fishing or landing conditions in a neighboring state are more favorable in the months leading up to service cannot escape his historical business connections with the forum state.

The defendant has cited many cases from the Eastern District of Louisiana, Louisiana state courts, and elsewhere, that suggest the mere existence of occasional port calls over a number of years does not sustain personal jurisdiction. *See e.g. Asarco v. Glenara*, 912 F.2d 784, 787 (5th Cir. 1990). *Asarco* was first a case of specific personal jurisdiction and only as an alternative did the court consider the parties' positions on general jurisdiction. *Id.* Further, the facts in that case are not analogous to the instant case. The *Asarco* court found that the defendant "was not licensed to do business in Louisiana; did not solicit business there; did not maintain an office there; and did not own property or employ personnel in the state." *Id.* Here, however the defendant was licenses to do business in North Carolina, solicited business in North Carolina, and employed crew in North Carolina. The other cases cited by the defendant fail to serve as comparable factual scenarios for similar reasons.

6

The Court does not disagree that a vessel's mere entry into a North Carolina port every once in a while does not constitute sufficient contacts. *See Nicolaisen v. Toei Shipping Co., Ltd.*, 722 F.Supp. 1162 (D.N.J. 1989), *aff'd without opinion*, 887 F.2d 262 (3d Cir. 1989), *motion for leave to proceed in forma pauperis denied*, 495 U.S. 928 (1990)(finding mere port calls and business dealings with a business located in the forum state are not enough to sustain personal jurisdiction). However, the Court finds that the defendant and its vessel had extensive contacts with the state beyond its port calls here; contacts that the defendant summarily dismisses in its brief by stating "[t]hese facts in no way illustrate a connection between J&N and North Carolina." [DE 23]. The contacts that defendant blows off are actually key to the Court's analysis and differentiate the instant fact pattern from the many cases cited by the defendant.

Viewed in isolation, perhaps, the defendant's contacts of any one type are not sufficient to support this Court's personal jurisdiction over it. In other words, was the Court to consider only the number of times the J&N docked in North Carolina those contacts might not be sufficient to sustain personal jurisdiction. However, this Court considers the defendant's following types of contacts with the forum state in concert: 1) the number of times the vessel came into port in North Carolina; 2) the amount of fish poundage landed under North Carolina quotas; 3) the issuance of multiple North Carolina licenses to defendant; and 4) the employment of the plaintiff, and other crewmembers, in North Carolina. These contacts viewed together, establish systematic and continuous contacts with the State of North Carolina sufficient to support general personal jurisdiction over the defendant. As such, the defendant's motion is properly denied.

7

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

SO ORDERED.

This the **30** day of July, 2013.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE